664 So.2d 1049 (1995)
STATE of Florida, Appellant,
v.
Clayton Blue ALBRITTON, Appellee.
No. 95-00088.
District Court of Appeal of Florida, Second District.
November 29, 1995.
*1050 Robert A. Butterworth, Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellant.
James Marion Moorman, Public Defender, Bartow, and Julia Diaz, Assistant Public Defender, Bartow, for Appellee.
PER CURIAM.
The state appeals an order granting a motion to suppress evidence seized during a search of the appellee's person. We reverse.
At the suppression hearing, Bradenton Police Officers William Foreman and Carl Craddock testified that they were patrolling the area of the Rogers Garden Apartments at approximately 6:20 p.m. on August 25, 1994. The apartments were city-owned and were a resident-only drug enforcement area. The residents of the complex were predominately black and Hispanic. The officers observed the appellee, a white male, enter the premises. The officers had been assigned to the area for some time and knew most of the residents by face. They did not recognize the appellee.
Approximately fifteen minutes later, the officers again observed the appellee walking toward the east as he left the complex. The officers, who were driving northerly; pulled up in their car approximately five feet in front of the appellee. They did not activate their overhead lights. Officer Craddock stated that the patrol car did not in any way block the appellee's ability to move. The officers remained in the car and asked the appellee why he was there. The officers had a roster of all the residents. The appellee responded that he was looking for a friend. He was unable to give the name of the friend.
At this point, the officers got out of their car and stood near the appellee. The officers testified they did not display a weapon, touch the appellee, or do anything to coerce the appellee during the encounter. They asked the appellee his name and the appellee identified himself. Officer Foreman explained to the appellee that the area was a resident-only drug enforcement area and asked if the appellee would consent to a search of his clothing for narcotics, paraphernalia, or weapons. The appellee said, "yes, go ahead." The officers had the appellee place his hands on the patrol car and patted down the appellee. The officers found cocaine in the appellee's sock.
The trial court ruled that the initial encounter, during which the officers asked the *1051 appellee for identification and inquired as to his reason for being in the area, was a valid citizen encounter. The trial court held that the officers could not, however, ask for the appellee's consent to be searched without reasonable suspicion that a crime was being committed. The trial court granted the motion to suppress on this basis.
The record supports the trial court's determination that the initial encounter was valid. Where a police officer approaches a citizen to ask questions or check identification and the contact evokes the voluntary cooperation of the citizen, the encounter does not constitute a seizure under the Fourth Amendment. J.C.W. v. State, 545 So.2d 306 (Fla. 1st DCA 1989). The evidence presented at the suppression hearing did not indicate that the officers' actions would have caused a reasonable person to believe he was not free to leave. See 545 So.2d at 307. Based on the totality of the circumstances, the encounter in this case was consensual. See Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991) (where officers ask questions of individual and request consent to search, no seizure occurs provided officers do not convey message that compliance with requests is required).
The trial court's statement that the officers were required to have a reasonable suspicion of criminal activity before seeking consent to search is incorrect. The Fourth Amendment requires that searches and seizures be founded upon an objective justification. United States v. Mendenhall, 446 U.S. 544, 551, 100 S.Ct. 1870, 64 L.Ed.2d 497, 507 (1980). Where, however, no seizure takes place, the constitutional safeguards are not invoked. 446 U.S. at 553, 100 S.Ct. at 1876-77. There was no seizure in the instant case. The officers were not required to have objective justification, or reasonable suspicion, before requesting consent to search.
The state had the burden of proving the voluntariness of the consent to search by a preponderance of the evidence. Denehy v. State, 400 So.2d 1216 (Fla. 1980). The officers' undisputed testimony established the following. The officers explained to the appellee that the complex was a residents-only drug enforcement area. They asked if the appellee would consent to a search of his person for narcotics or weapons, and he said, "yes, go ahead." The officers testified that their tone with the appellee was casual conversation, the patrol car did not in any way block the appellee's ability to move, they never told the appellee he was not free to leave, they never displayed a weapon, and they never touched the appellee before the search. Taking all the circumstances into account, the only conclusion supported by the evidence is that the appellee's consent was voluntary.
The appellee argues that the suppression must be affirmed under Barna v. State, 636 So.2d 571 (Fla. 4th DCA 1994). That case, however, deals with consent to search obtained during an unlawful detention, and is therefore distinguishable. In cases of unlawful detention, a person's tacit approval to be searched is presumed involuntary and will not, without more, break the chain of illegality. Cowart v. State, 635 So.2d 1063, 1064 (Fla. 2d DCA 1994).
Because the encounter between the officers and the appellee was consensual and the appellee's consent to search was voluntary, we reverse the order granting suppression and remand for further proceedings.
Reversed and remanded.
THREADGILL, C.J., and SCHOONOVER and PATTERSON, JJ., concur.