732 So.2d 376 (1999)
Jocelyn PIERRE, Appellant,
v.
STATE of Florida, Appellee.
No. 98-01217.
District Court of Appeal of Florida, Second District.
March 3, 1999.
Rehearing Denied March 18, 1999.
*377 David R. Gemmer, St. Petersburg, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Erica M. Raffel, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Jocelyn Pierre appeals the final judgment imposed after he pleaded nolo contendere to trafficking in cocaine, obstructing an officer without violence, and carrying a concealed firearm. We reverse.
The State charged Pierre with these three crimes; thereafter, Pierre filed a motion to suppress the evidence. At the suppression hearing, the following evidence was adduced.
Officer Montague stopped Pierre's vehicle at 6:30 p.m., for passing through a stop sign. Upon request, Pierre gave Officer Montague his driver's license. Officer Montague ran a computer check on the driver's license and possibly a check on the vehicle registration.
While the computer check was being made, two other patrol cars with uniformed officers arrived for back-up. Officer Montague told the other officers that Pierre seemed to be nervous. Officer Montague observed Pierre appear to reach under his seat with his right hand, and look back at the officer. When the computer check was completed, Officer Montague went back to Pierre's car and asked him to turn off the engine and to exit the vehicle. Officer Montague requested Pierre to exit his vehicle for officer safety because he saw Pierre reach under his seat. Pierre promptly complied, at which time, Office Montague noted that Pierre was visibly shaking.
Officer Montague testified that he advised Pierre that the license check was fine. Additionally, he had no intention of issuing a citation for the traffic infraction when he returned the license to Pierre. When he returned the license to Pierre, he *378 was free to leave in his vehicle. However, Officer Montague then asked Pierre if he could search his vehicle for guns and drugs. Pierre said, "[s]ure, go ahead," and motioned with a hand gesture toward the car to indicate consent.
Officer Montague instructed Pierre to stand by Officer McFarlane. As Officer Montague approached the vehicle to start the search, Pierre ran.
The officers chased Pierre and eventually apprehended him and returned him to the vehicle. Officer Montague and Officer Prebich then searched the vehicle. Officer Montague found hard cocaine under the front seat, and Officer Prebich found a firearm in the arm rest area of the back seat.
In his motion to suppress, Pierre swore under oath that the vehicle did not belong to him. After the trial court denied the motion, Pierre entered a nolo contendere plea to the charges, reserving the right to appeal the denial of his motion to suppress.
The single issue to resolve in this case is whether there was a legal basis to conduct a warrantless search of the vehicle. We agree with the trial court that there was a legal basis to stop Pierre's vehicle for running a stop sign. See § 316.640, Fla. Stat. (1997). Also, Officer Montague did not violate Pierre's Fourth Amendment rights by asking him to exit the vehicle following a valid traffic stop. See Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Because Pierre was free to leave when the officer asked for permission to search the vehicle, we conclude that at this point in the exchange there was only a consensual encounter between Officer Montague and Pierre. See State v. Albritton, 664 So.2d 1049 (Fla. 2d DCA 1995).
However, after Pierre consented to the search he ran, which requires a determination of whether he withdrew his consent. The supreme court has concluded that running constitutes a nonverbal withdrawal of consent to search. See Jacobson v. State, 476 So.2d 1282 (Fla.1985). See also Nease v. State, 484 So.2d 67 (Fla. 4th DCA 1986). If Pierre withdrew his consent to search when he ran, we know of no existing probable cause present at that moment to permit the officers to chase Pierre and take him into custody. Therefore, we conclude that Pierre's arrest for obstructing an officer without violence cannot stand.
Next, we must consider whether the search of the vehicle was proper under a theory of abandonment of the vehicle. In State v. Wynn, 623 So.2d 848 (Fla. 2d DCA 1993), this court addressed when a defendant could, through abandonment of a vehicle, forfeit his right to an expectation of privacy in the vehicle. In Wynn, the defendant left his vehicle unlocked and illegally parked for forty-five minutes. See id. There was no record of the license tag, which indicated to the officer that the vehicle might be stolen. See id. at 849. This court held that when a car is voluntarily abandoned and is illegally parked, the officer is allowed to search the car and "seize any illegal substance whether it was in plain view or not." Id.
In State v. Lawson, 394 So.2d 1139 (Fla. 4th DCA 1981), the Fourth District Court concluded that a defendant's act of leaving a vehicle parked in a "no loitering" zone without saying a word to an officer who was present sufficiently evidenced the defendant's intention to abandon the vehicle. Therefore, it was proper for the officer to search the vehicle for ownership papers and to seize any illegal substance. See id. at 1140.
The issue in this case is whether a search is proper under a theory of abandonment after the officers apprehended Pierre and returned him to the vehicle. Unlike Wynn, there is no indication that this vehicle was stolen, nor was there any indication from the police department computer that Pierre had any outstanding warrants. If Pierre had failed to return to *379 the vehicle or the officers had failed to apprehend him and return him to his vehicle which was stopped on the street, apparently with the keys in the ignition, then Wynn would support a search of the vehicle.
Other states have recognized that an abandoned vehicle may be searched without a warrant. In Thom v. State, 248 Ark. 180, 450 S.W.2d 550 (1970), the court stated:
Sometimes an automobile takes on the characteristics of a man's castle. Other times an automobile takes on the characteristics of an overcoat-that is, it is movable and can be discarded by the possessor at will. If appellant in his endeavors to avoid the clutches of the law had discarded his overcoat to make his flight more speedy, no one would think that an officer was unreasonably invading his privacy or security in picking up the overcoat and searching it thoroughly. In that situation most people would agree that the fleeing suspect had abandoned his coat as a matter of expediency as well as any rights relative to its search and seizure. What difference can there be when a fleeing burglar abandons his automobile to escape from the clutches of the law? We can see no distinction and consequently hold that when property is abandoned in making a search thereof do no violate any rights or security of a citizen guaranteed under the Fourth Amendment.
450 S.W.2d at 552.[1]See also United States v. Walton, 538 F.2d 1348, 1354 (8th Cir.1976) (held that a warrantless search was not unreasonable when the occupants fled the vehicle when it was approached by the police officer, thus abandoning the car); Hudson v. State, 642 S.W.2d 562, 565 (Tex.App.1982) (car was deemed abandoned and subsequent car search not unreasonable where driver consented to a search of the trunk of his car and thereafter ran away).
We reverse the trial court's order denying the motion to suppress because Pierre withdrew his consent when he ran. Thereafter, when Pierre was returned to his vehicle, it could no longer be said that he had abandoned his vehicle. Accordingly, because there was no probable cause to detain Pierre prior to the search, nor after he was returned, but for the illegal arrest and detention of Pierre, the search of the vehicle could not proceed.
The irony is that had Pierre managed to get away, this search and contraband seizure could have been sustained under a theory of abandonment. See Wynn. Furthermore, if the officers had not caught Pierre, they could have impounded the vehicle, and the subsequent discovery of the cocaine and the firearm during an inventory search upon impoundment would have been admissible against Pierre. See State v. Wells, 539 So.2d 464, 469 (Fla.1989).
We reverse with directions to the trial court to dismiss the obstruction charge and to grant the motion to suppress. Upon remand, the trial court must address whether this court's decision affects Circuit Court Case No. 97-16862, another case in which Pierre is the defendant.
PARKER, C.J., and BLUE and NORTHCUTT, JJ., Concur.
NOTES
[1] In LaFave, Search and Seizure, § 2.5(a) (1996), in commenting upon Thom, it states:

The Thom reasoning overshoots the mark somewhat, and thus should not be taken to mean that a vehicle is abandoned in the sense in which that word is here being used, whenever it is left parked in the vicinity of the place where a crime was committed. The fact of the matter is that a car and an overcoat are different; one can hardly expect privacy in an overcoat left on the street, but cars are regularly parked on the street for brief periods of time without an expectation that they will thereby be subject to entry.