788 So.2d 1040 (2001)
Stacy Lee WATTS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-683.
District Court of Appeal of Florida, Second District.
March 16, 2001.
*1041 James Marion Moorman, Public Defender, Bartow, and Paul C. Helm, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ann Pfeiffer Howe, Assistant Attorney General, Tampa, for Appellee.

EN BANC
DAVIS, Judge.
Stacy Lee Watts challenges his convictions for possession of cocaine and marijuana, arguing that the trial court should have suppressed the drugs that officers discovered on his person after they approached him on the street. We affirm.
At the suppression hearing, Fort Myers police officers testified that they were traveling northbound on Marsh Avenue about 7:00 p.m. when they saw Watts walking down the sidewalk. He was walking from a "high drug area" toward a "drug house." The officers pulled their patrol car over, without blocking Watts' way, and asked Watts if he would talk with them. The officers admitted that they had not seen Watts commit any illegal activity and saw no indication that Watts possessed a weapon. As Watts walked up to the patrol car, the officers exited the patrol car and asked Watts if they could ask him some questions about drug activity in the area. Watts replied that although it might appear that he had been at the drug house, he was carrying an empty can because he did not want to litter. One of the officers then asked Watts for identification, which he provided. The officer ran a warrants check on Watts, which was negative, handed Watts' identification back to him, and indicated he was free to go. However, as Watts began to leave, the officer asked if he could search him. Watts replied, "sure." As the officer began searching Watts' back pockets, Watts turned around to face him, saying that he had marijuana in his front pocket.
The record supports the trial court's conclusion that the initial stop was a lawful consensual encounter. Watts maintains, however, that the consensual encounter was transformed into a stop when the officer, having already indicated that Watts was free to go, asked Watts for consent to search. We are not persuaded. Watts was still free to go at this point and the encounter remained consensual. See Pierre v. State, 732 So.2d 376, 378 (Fla. 2d DCA 1999) (citing State v. Albritton, 664 So.2d 1049 (Fla. 2d DCA 1995)).
Although Watts admits that he consented to the search, he maintains that his consent was not voluntary but rather was in acquiescence to the officer's apparent authority. Watts further argues that even if his consent was voluntary, the search was invalid because the officers did not have a founded suspicion to request consent to search.
Turning first to the voluntariness of Watts' consent, we note that the trial court found that the consent was valid, quoting verbatim from head note five in State v. Albritton, 664 So.2d 1049 (Fla. 2d DCA 1995), which states:
Defendant's consent to search was voluntary under totality of circumstances after officers, while remaining in their *1042 patrol car, asked defendant why he was [in] resident-only drug enforcement zone and asked consent to search him for narcotics or weapons; officers' tone was casual, patrol car did not in any way block defendant's ability to move, officers never displayed weapon or told defendant that he was not free to leave, and officers never touched defendant before search.
Id. at 1050 (citations omitted).
The record supports the trial court's conclusion. Although Watts testified that one of the officers jumped in front of him and the other one stood behind him, asking if he had any drugs or weapons, the officers testified otherwise, stating that as Watts was walking away, one of them asked him if they could search him. Watts did not testify that either of the officers threatened him. See Dunbar v. State, 592 So.2d 1230 (Fla. 2d DCA 1992). Neither did Watts testify that either of the officers used threatening words or a threatening tone of voice. In fact, Watts testified that he did not recall the tone they used in speaking to him. An appellate court "should not overturn a trial court's decision regarding consent unless the decision is clearly erroneous." Davis v. State, 594 So.2d 264, 266 (Fla.1992). Based upon this record, we cannot say that the trial judge's conclusion was clearly erroneous. We, therefore, accept the trial court's determination that Watts' consent was voluntary.
The remaining issue, whether an officer must have a founded or reasonable suspicion of criminal activity or a reasonable belief that the defendant is armed before he or she requests consent to search, is more troublesome. This court has issued divergent opinions on this question. In 1995, we issued State v. Albritton, 664 So.2d 1049 (Fla. 2d DCA 1995), where we stated:
The trial court's statement that the officers were required to have a reasonable suspicion of criminal activity before seeking consent to search is incorrect. The Fourth Amendment requires that searches and seizures be founded upon an objective justification. Where, however, no seizure takes place, the constitutional safeguards are not invoked. There was no seizure in the instant case. The officers were not required to have objective justification, or reasonable suspicion, before requesting consent to search.
Id. at 1051 (citations omitted).
However, in 2000, we issued McElwain v. State, 777 So.2d 987 (Fla. 2d DCA 2000), in which we held that where the officers lacked a founded suspicion of criminal activity and had no reason to believe that the defendant was armed, the officers were not justified in conducting a pat-down search of the defendant, even though he consented to the search. As support for that position, the McElwain decision cites to this court's opinion in Cubby v. State, 707 So.2d 351 (Fla. 2d DCA) review denied, 717 So.2d 538 (Fla.1998). While the facts in Cubby would certainly appear to implicate the issue of consent, the majority opinion in Cubby makes no mention of consent at all. That issue is only raised by the dissent. Neither was consent an issue in the cases Cubby cites for support. Because we cannot discern whether Cubby considered the consent issue, we are not certain whether Cubby conflicts with Albritton. However, we are persuaded by the reasoning presented in Albritton that an officer's request for consent to search is not a seizure and, therefore, does not require objective justification.
Accordingly, in resolving the divergence of opinion between McElwain and Albritton, we elect to follow Albritton and hold that an officer need not have a reasonable *1043 or founded suspicion of criminal activity before seeking consent to search. Therefore, we affirm the trial court's denial of Watts' motion to suppress the evidence on the basis of Albritton, and we recede from McElwain and Cubby to the extent that they conflict with Albritton.
Affirmed.
PATTERSON, C.J., THREADGILL, PARKER, ALTENBERND, BLUE, FULMER, WHATLEY, NORTHCUTT, GREEN, CASANUEVA, SALCINES, STRINGER, and SILBERMAN, JJ., concur.