VILLANTI, Judge.
Brian Jones appeals the trial court’s withhold of adjudication for possession of methamphetamine and possession of drug paraphernalia. Jones entered a guilty plea to the charges, reserving the right to appeal the denial of his dispositive motion to suppress methamphetamine and paraphernalia seized without a warrant. We reverse the judgment because the deputy exceeded the limited scope of the search, the criminal nature of the tackle box that contained the methamphetamine and drug paraphernalia was not immediately apparent, and thus the seizure of the items inside the tackle box was illegal for lack of probable cause.
A deputy sheriff received an anonymous tip that Jones may have a stolen boat motor in his possession and may have killed an eight-point buck on Kissimmee State Park property. On January 16, 2003, the deputy went to Jones’s trailer at a fish camp to investigate the tip. The deputy told Jones that he was looking for a stolen boat motor. Jones was cooperative and offered to show the deputy his two boats at another fish camp. Jones and the deputy went to the second fish camp in separate cars. At the second camp, Jones showed the deputy his two boats with motors at a dock and other boat motors in a shed. None of the boat motors matched the description of the motor the deputy was investigating. Apparently, there was also no sign of a deer carcass. The deputy and Jones continued chatting for about thirty minutes to an hour. The deputy testified that during his conversation with Jones, Jones admitted to having a felony record based upon a juvenile conviction.
Jones also admitted that he had a gun but said that it had been stolen from him. The deputy then noticed shotgun shells in one of the boats and became suspicious that Jones might be illegally in possession of a firearm. The deputy and Jones eventually drove back to Jones’s trailer.
At the trailer, the deputy asked Jones’s permission to search inside the trailer for the stolen boat motor and a 12-gauge shotgun. Jones agreed, allowed the deputy entry, and accompanied him during the search. In the course of the search, the deputy lifted a mattress in Jones’s bedroom. Between the mattress and the box spring, there was a clear, plastic tackle box. The deputy testified:
I picked up the mattress and between the mattress and the box spring there was a clear Shimano tackle box, a plastic one, about a inch deep inch-two inch deep. If I remember right it’s about 10 inches by 8 inches square the top lid. And it was clear and when I picked it up I could look in and each little compartment was labeled with a piece of tape or something, I don’t remember. Anyway each one was labeled and I could see inside of it that there was narcotic paraphernalia-methamphetamine paraphernalia.
[[Image here]]
He had aluminum hollow shaft arrows ....
... a small bag with a small amount of crank still in it. It was tied up, a corner baggie rolled and tied. You could see the powder inside. I think there was another small baggie-there was a couple of the baggies but each compartment was labeled with what it had in it. It had clean dope, old dope, clean swabs, old swabs, new tubes, used tubes, everything.
The deputy seized the methamphetamine and drug paraphernalia, and Jones was *1249 charged with two counts of possession. Jones filed a motion to suppress the methamphetamine and drug paraphernalia, arguing that the deputy did not have probable cause to search between the mattresses. The court denied the motion. The issue we must resolve is whether the deputy legally entered Jones’s home without a warrant and properly seized the methamphetamine and drug paraphernalia from the tackle box that came into the officer’s plain view when he lifted the mattress.
Under the plain view doctrine, an item may be seized without a warrant if (1) the police are legitimately in a place where the item may be viewed, (2) the incriminating character of the item is immediately apparent, and (3) the police have a lawful right of access to the item. Pagan v. State, 830 So.2d 792, 808 (Fla.2002); State v. Walker, 729 So.2d 463, 464 (Fla. 2d DCA 1999); State v. Futch, 715 So.2d 992, 993 (Fla. 2d DCA 1998).
We conclude that the State met only the first and third prongs of the plain view doctrine. As to the first prong, the deputy was in a place where he had a legitimate right to be — Jones’s bedroom in his trailer home. Before entering Jones’s home, the deputy specifically asked for consent to search the trailer for a boat motor and a 12-gauge shotgun.[1] Jones voluntarily consented and even accompanied the deputy on the search.
As to the third prong, whether law enforcement has a lawful right of access to an object is “generally determined by the scope of the search permitted by either the terms of a validly issued warrant or the character of the relevant exception to the warrant requirement.” Jones v. State, 648 So.2d 669, 677 (Fla. 1994). Here, the scope of the deputy’s search was limited by Jones’s consent to a search for a boat motor and a 12-gauge shotgun. In the course of the deputy’s search, he lifted the mattress. Upon lifting the mattress, the tackle box was in the deputy’s plain view. The deputy testified that guns are commonly hidden underneath mattresses. Therefore, lifting the mattress did not exceed the scope of the consensual search. The deputy had a lawful right to lift the mattress and a right of access to the tackle box that was in plain view once he lifted the mattress.[2] See State v. Walker, 729 So.2d 463, 464 (Fla. *1250 2d DCA 1999) (finding that a law enforcement officer who was investigating a burglary in a home had a lawful right of access to bags of cocaine that were lying on the kitchen floor, “open, in plain view of, and nearby to the officer who observed them”).
The State fails to meet the second prong of the plain view doctrine because the incriminating nature of the methamphetamine and drug paraphernalia was not immediately apparent. A tackle box beneath a mattress alone is not sufficient to suggest an incriminating nature — Jones could have been hiding any number of perfectly legitimate items in the small box underneath his mattress. Although the deputy testified that the tackle box was transparent, he also said that he had to pick it up to identify what was inside. The deputy specifically testified, “[W]hen I picked it up I could look in and each little compartment was labeled.... [A]nd I could see inside of it that there was narcotic paraphernalia-methamphetamine paraphernalia.” (Emphasis added.)
“Florida courts consistently have held that when closer examination of an item observed in plain view is necessary to confirm the incriminating nature of the contraband, its incriminating nature is not considered ‘immediately apparent.’ ” Sawyer v. State, 842 So.2d 310, 312 (Fla. 5th DCA 2003) (citing Caplan v. State, 531 So.2d 88 (Fla.1988), and Carr v. State, 353 So.2d 958 (Fla. 2d DCA 1978)). In Sawyer, an officer found Ecstasy during a valid traffic stop. However, the officer testified that he could not tell what kind of pill it was until he seized it. He had to pick up the white pill and examine its design before he could identify it as Ecstasy. Therefore, its incriminating nature was not immediately apparent. In Ray v. State, 634 So.2d 695, 696 (Fla. 1st DCA 1994), an officer was searching a defendant’s home for marijuana pursuant to a valid search warrant. During his search, the officer lifted up a mattress and found a gun. The incriminating nature of the gun was not immediately apparent because the officer did not realize that the gun had a defaced serial number until he picked it up and turned it.
It is undisputed that the eight-by ten-inch tackle box could not have contained either a 12-gauge shotgun or a boat motor. Picking up the tackle box and examining its contents extended the search beyond the scope permitted by Jones’s consent. See Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) (reasoning that an officer’s actions in moving stereo equipment to locate serial numbers and determine if the equipment was stolen had to be supported by probable cause, even though the officer was lawfully present in the apartment and the equipment was located in plain view). Additionally, the deputy gave no reason for his exceeding the limited scope of the consensual search. He picked the tackle box up, not because he saw contraband inside or underneath it, but apparently to satisfy his curiosity. Because the incriminating nature of the tackle box’s contents was not immediately apparent, the deputy did not have probable cause to seize it. See Jones, 648 So.2d at 678 (“This ‘immediately apparent’ requirement is another way of saying that at the time police view the object to be seized, they must have probable cause to believe that the object is contraband or evidence of a crime.”). When the deputy saw the tackle box underneath the mattress and did not immediately identify the criminal nature of its contents, he should have returned the mattress to its place or asked for consent to examine the tackle box further. Instead, without either consent or probable cause, the deputy improperly picked up the tackle box and peered inside.
*1251 Because the incriminating nature of the methamphetamine inside the tackle box was not immediately apparent, the deputy did not have probable cause to seize the methamphetamine and drug paraphernalia under the plain view doctrine. Thus, we reverse Jones’s judgment and sentence and remand with instructions that the trial court grant the motion to suppress and vacate the judgment and sentence.
Reversed and remanded.
ALTENBERND, C.J., and FULMER, J., Concur.

. Jones argued below that the deputy's request for consent was improper because it was based only on Jones's statement that a gun had been stolen from him and Jones’s questionable admission that he had been convicted of a felony as a juvenile. We disagree. An officer need not have a reasonable suspicion of criminal activity before seeking consent to search. State v. Carson, 801 So.2d 165, 166 (Fla. 2d DCA 2001) (citing State v. Albritton, 664 So.2d 1049 (Fla. 2d DCA 1995)).

. At the suppression hearing, the defense argued that the deputy did not have a right to lift the mattress because he testified that he did not notice a lump in the mattress. The court offered to take judicial notice that a 12-gauge "is gonna make a lump in a bed.” Our analysis of whether the deputy had a right to lift the mattress is not affected by the trial court's improper taking of judicial notice. Sections 90.202(11) and (12), Florida Statutes (2003), allow a court to take judicial notice of facts that are not subject to dispute because they are either "generally known within the territorial jurisdiction of the court” or "capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.” Here, the fact of whether a 12-gauge shotgun would have caused a visible lump in Jones’s mattress is subject to dispute. No records or sources were before the trial court to establish that all 12-gauge shotguns cause visible lumps in all mattresses and the lump-causing properties of 12-gauge shotguns are not generally known facts. At the very least, the State should have been given notice and opportunity to dispute. § 90.204, Fla. Stat. (2003).