**STATE of Utah, Plaintiff and Appellee,**

v.

**Gregory Morris MATISON, aka Gerald Morris, aka Morris Gregory Matison, Defendant and Appellant.**

No. 930106–CA.

Court of Appeals of Utah.

May 19, 1994.

---

D. Gilbert Athay, Salt Lake City, for appellant.

Jan Graham and Todd A. Utzinger, Salt Lake City, for appellee.

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

BENCH, Judge:

Defendant appeals his conviction for possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58-37-8(2) (Supp.1991). We vacate and remand.

### FACTS

On January 14, 1992, Sevier County Deputy Sheriff Phil Barney was traveling on Interstate 70 near Salina, Utah, when he observed a vehicle fishtail while exiting the interstate. The vehicle had been on the interstate heading east. Deputy Barney observed the vehicle proceed off the interstate and stop at a nearby convenience store. He drove to the spot where he had seen the vehicle fishtail to determine whether there were any hazardous conditions on the road. He determined that there were no hazards on the road, but decided not to question the

driver. Instead, he proceeded east on the interstate for about three miles where he pulled over to observe traffic.

Some time later, Deputy Barney observed the vehicle he had seen fishtail earlier near Salina. Although he did not observe anything illegal at the time, Deputy Barney testified that he decided to stop the vehicle to determine whether the driver was impaired or why the driver was unable to control the vehicle while exiting the interstate near Salina.

Deputy Barney initially refused to tell defendant why he was being stopped, but asked for his driver's license and registration. The defendant produced his license, an Arizona registration, and a bill of sale for the vehicle and informed Deputy Barney that the vehicle belonged to a friend who had asked him to deliver it to Minnesota. After checking the license and registration, Deputy Barney informed defendant that he had stopped him because of the fishtailing incident when he had exited the interstate near Salina. Defendant indicated that the reason he fishtailed was because he had had a problem with the vehicle's cruise control.

Deputy Barney testified that during the stop he smelled coffee grounds, a known masking agent for drugs. Because of this smell, he asked defendant if he could look in the vehicle. Defendant responded, "Well, if you like." Deputy Barney searched the interior of the vehicle, and then said, "Would you pop the trunk?" Defendant opened the trunk. Deputy Barney testified that after defendant opened the trunk he saw two suitcases and some other items, and he smelled marijuana. Deputy Barney felt the suitcases and asked defendant who owned them. Defendant responded that his friend owned the suitcases, and that some of the contents of the trunk were already present when he took possession of the vehicle. Deputy Barney found marijuana in the suitcases and placed defendant under arrest. Defendant was convicted of possession of marijuana, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2) (Supp.1991). This appeal followed.

## ISSUES

Defendant raises the following issues on appeal: (1) whether the trial court erred in ruling that the initial stop was legal; (2) whether the trial court erred by holding that he did not have standing to challenge the search of the vehicle and its contents; (3) whether the trial court erred in holding that Deputy Barney had a reasonable articulable suspicion sufficient to detain him beyond the scope of the traffic stop; (4) whether the trial court erred in holding that his consent to the search of the vehicle was voluntary; and (5) whether the trial court erred by not determining whether his consent was sufficiently attenuated from the allegedly illegal stop.

## ANALYSIS

### Validity of Traffic Stop

■ Defendant argues that the initial traffic stop was illegal. The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. In *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979), the United States Supreme Court held that "stopping an automobile and detaining its occupants constitute[s] a seizure within the meaning of [the Fourth Amendment], even though the purpose of the stop is limited and the resulting detention is quite brief." *Accord State v. Talbot*, 792 P.2d 489, 491 (Utah App.1990) (fourth amendment rights apply to traffic stops "regardless of the reason for the stop or the brevity of the detention"). In order to determine whether Deputy Barney complied with the Fourth Amendment, "we make a dual inquiry: (1) Was the police officer's action 'justified at its inception'? and (2) Was the resulting detention 'reasonably related in scope to the circumstances that justified the interference in the first place'?" *State v. Lopez*, 873 P.2d 1127, 1131–32 (Utah 1994) (quoting *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)).

As to the first inquiry, an officer is "constitutionally justified in stopping a vehicle if the stop is 'incident to a traffic violation commit-

ted in the officer's presence.'" *Id.* (quoting *Talbot,* 792 P.2d at 491); *accord State v. Marshall,* 791 P.2d 880, 883 (Utah App.), *cert. denied,* 800 P.2d 1105 (Utah 1990). A stop is also "justified when the officer has 'reasonable articulable suspicion that the driver is committing a traffic offense, such as driving under the influence of alcohol or driving without a license ... [or that] the driver is engaged in more serious criminal activity, such as transporting drugs.'" *Lopez,* 873 P.2d at 1132 (quoting *State v. Lopez,* 831 P.2d 1040, 1043 (Utah App.1992)).

As to the second inquiry, the question is "whether the stop was reasonably related in scope to the traffic violation which justified it in the first place." *Id.* "Once a traffic stop is made, the detention 'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" *Id.* (quoting *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983)). In *State v. Robinson,* 797 P.2d 431 (Utah App.1990), we discussed the permissible length and scope of a traffic stop:

> An officer conducting a routine traffic stop may request a driver's license and vehicle registration, conduct a computer check, and issue a citation. However, once the driver has produced a driver's license and evidence of entitlement to use the vehicle, "he must be allowed to proceed on his way, without being subjected to further delay by police for additional questioning."

*Id.* at 435 (quoting *United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir.1988)). "Investigative questioning that further detains the driver must be supported by reasonable suspicion of more serious criminal activity. Reasonable suspicion means suspicion based on specific, articulable facts drawn from the totality of the circumstances facing the officer at the time of the stop." *Lopez,* 873 P.2d at 1132; *accord State v. Mendoza,* 748 P.2d 181, 183 (Utah 1987); *State v. Munsen,* 821 P.2d 13, 15 (Utah App.1991), *cert. denied,* 843 P.2d 516 (Utah 1992); *Robinson,* 797 P.2d at 435.

In the present case, Deputy Barney's stop of the vehicle was not " 'justified at its inception.'" *Lopez,* 873 P.2d at 1132 (quoting *Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1879).

Defendant did not commit a traffic offense immediately prior to being stopped. Deputy Barney had earlier witnessed a vehicle fishtail, then drove to the area where the incident had occurred and determined that it was not the result of hazardous road conditions. However, he did nothing more concerning the incident even though he was aware of defendant's location; instead, he proceeded away from the site of the incident. He later stopped defendant only because, by mere happenstance, defendant was traveling in the same direction as Deputy Barney. While Deputy Barney testified that he stopped the defendant to determine whether he was impaired or why he was unable to control the vehicle at the interchange near Salina, defendant clearly would not have been stopped had he proceeded by another route. Had Deputy Barney continued to investigate the incident after determining that it was not caused by road conditions, rather than expressly abandoning further investigation by proceeding away from defendant, the stop may have been justified. Instead, he drove away from Salina and defendant with no apparent intention of stopping him. We therefore conclude that the initial stop was illegal.

### Standing

Defendant argues that the trial court erred in ruling that he did not have standing to challenge the search of the vehicle and its contents. In *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978), the United States Supreme Court held that a defendant has standing to challenge a search if he or she can establish "a legitimate expectation of privacy in the invaded place." Determining whether a defendant has shown the requisite expectation of privacy in the area searched involves a two-step process. *State v. Sepulveda,* 842 P.2d 913, 915 (Utah App.1992). The first step is to determine whether the defendant "has demonstrated 'a subjective expectation of privacy in the object of the challenged search.'" *State v. Taylor,* 818 P.2d 561, 565 (Utah App.1991) (quoting *United States v. Hastamorir,* 881 F.2d 1551, 1560 (11th Cir.1989)). "An expectation of privacy is a question of intent, which

'may be inferred from words spoken, acts done, and other objective facts.'" *United States v. Labat,* 696 F.Supp. 1419, 1425 (D.Kan.1988) (quoting *United States v. Kendall,* 655 F.2d 199, 202 (9th Cir.1981)); *accord United States v. Hernandez,* 7 F.3d 944, 947 (10th Cir.1993). The second step is to determine "whether society is 'willing to recognize the individual's expectation of privacy as legitimate.'" *Taylor,* 818 P.2d at 565 (quoting *Hastamorir,* 881 F.2d at 1560); *accord United States v. Soto,* 988 F.2d 1548, 1552 (10th Cir.1993).

■ The legitimacy of a driver's expectation of privacy depends on the driver's lawful possession of the vehicle. *Soto,* 988 F.2d at 1552. The driver "must have at least permissive, possessory control of the car to contest a warrantless automobile search." *Sepulveda,* 842 P.2d at 915; *accord State v. Constantino,* 732 P.2d 125, 126–27 (Utah 1987) (per curiam). "A defendant 'who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy' in the property." *State v. DeAlo,* 748 P.2d 194, 196 (Utah App.1987) (quoting *Rakas,* 439 U.S. at 144 n. 12, 99 S.Ct. at 431 n. 12).

In *Constantino,* police officers stopped the car driven by Constantino because one of the officers knew that Constantino's driver's license had been suspended and that the passenger had an outstanding warrant. Constantino told the officers that the registered owner of the car was "Mr. Goberg." The officers impounded the car until they could find a licensed driver or contact the owner. During an inventory search of the car, the officer found two plastic bags of marijuana bearing Constantino's finger prints.

On appeal, Constantino complained that the search of the vehicle was illegal. However, the Utah Supreme Court declined to reach the merits of Constantino's claim concerning the validity of the search.

> Defendant presented no testimony that he had driven the car with the permission of the owner or that he had borrowed the car under circumstances that would imply permissive use. Absent claimed right to possession, he could not assert any expecta-

tion of privacy in the items seized and had no standing to object to the search.

732 P.2d at 126–27.

In *Sepulveda,* a police officer stopped a vehicle driven by Sepulveda after observing that the vehicle's registration sticker was expired. Sepulveda stated that a friend in California had loaned him the vehicle. A subsequent search of the vehicle revealed a compartment containing cocaine. In contrast to *Constantino,* the court held that Sepulveda's response that the vehicle he was driving had been loaned to him by a friend demonstrated a subjective expectation of privacy. 842 P.2d at 916. In addition, because Sepulveda was a driver with permission to use the vehicle and had personal belongings in the vehicle, he manifested an expectation of privacy that society is willing to recognize as legitimate. *Id.* Consequently, the court was "persuaded [Sepulveda] demonstrated an expectation of privacy sufficient to permit him to challenge [the officer's] warrantless search of the car." *Id.* at 917.

In the present case, defendant's unchallenged statement that his friend had loaned him the car to deliver it to Minnesota demonstrates the requisite subjective expectation of privacy. *See id.* at 916. Additionally, his permissive use of the vehicle manifested an expectation of privacy society is willing to recognize as legitimate. *Id.* Defendant had a reasonable expectation of privacy in the vehicle and its contents and, unless waived, has standing to challenge the admission of evidence seized during the search. *Id.; accord Soto,* 988 F.2d at 1552–53 (defendant had reasonable expectation of privacy in vehicle and its contents where he demonstrated lawful possession).

### Abandonment

The State concedes that defendant may have had a reasonable expectation of privacy in the interior and trunk of the vehicle, but asserts that defendant failed to demonstrate an expectation of privacy in the suitcases. Among other arguments, the State asserts that defendant surrendered any expectation of privacy he may have had in the suitcases when he disavowed ownership in the suitcases during the search. In so arguing, the

State urges that defendant waived or abandoned any expectation of privacy he may have had in the suitcases.

■ Abandonment results in the forfeiture of any expectation of privacy in the object of the search, and consequently a loss of standing to challenge the admission of evidence seized pursuant to the search of the object. *See Labat,* 696 F.Supp. at 1425. Because of the trial court's determination regarding standing generally, it made no findings with respect to whether defendant abandoned any expectation of privacy in the suitcases. In view of our determination that defendant initially had standing to contest the search, we remand for a determination of whether defendant abandoned his expectation of privacy in the suitcases.

■ Any abandonment of defendant's expectation of privacy in the suitcases must be voluntary, and because we have concluded that the stop was illegal, any abandonment must also be sufficiently attenuated from the illegal stop. *See Labat,* 696 F.Supp. at 1424–26; *Marshall,* 791 P.2d at 889. If the challenged evidence is to be suppressed as a result of illegal police conduct, "defendant must show a nexus between the allegedly unlawful police conduct and the abandonment of the property." *Labat,* 696 F.Supp. at 1426; *accord Marshall,* 791 P.2d at 889; *see also United States v. Roman,* 849 F.2d 920, 923 (5th Cir.1988) (must be causal nexus between unlawful police conduct and individual's abandonment of privacy interest); *United States v. Gilman,* 684 F.2d 616, 620 (9th Cir.1982) (same).

■■ A determination of attenuation for abandonment purposes is similar to the analysis used in determining whether a defendant's consent was sufficiently attenuated from any illegal police conduct. *See United States v. Ward,* 961 F.2d 1526, 1535 (10th Cir.1992) ("We believe that the appropriate analysis of this issue is the same as that of the voluntariness of a consent to search that was preceded by a Fourth Amendment violation."); *State v. Thurman,* 846 P.2d 1256, 1262–63 (Utah App.1993) (setting forth analysis used for considering validity of consent following illegal police conduct). Three fac-

tors must be considered in determining whether police illegality is sufficiently attenuated from the abandonment: "[1] 'the purpose and flagrancy of the official misconduct,' [2] the 'temporal proximity' of the illegality and the [abandonment], and [3] 'the presence of intervening circumstances.'" *Thurman,* 846 P.2d at 1263 (quoting *State v. Arroyo,* 796 P.2d 684, 691 n. 4 (Utah 1990)). Like most questions involving the application of law to fact, attenuation should be decided in the first instance by the trial court subject to the appropriate standard of review on appeal. *State v. Pena,* 869 P.2d 932, 936–37 (Utah 1994) ("[W]hile we generally consider de novo a trial court's statement of the legal rule, we often review with far less rigor the court's determination of the legal consequences of facts.").

In the present case, because of the trial court's erroneous ruling that the initial stop was legal, the trial court did not make any findings on abandonment or attenuation. Therefore, if on remand the trial court determines that defendant voluntarily abandoned any expectation of privacy in the suitcases, the court must also determine whether the abandonment was sufficiently attenuated from the illegal stop.

### Consent and Other Issues

Because of our determination that the initial traffic stop was illegal, the trial court's prior determination of consent is now incomplete; the trial court has not determined whether defendant's consent to the search was sufficiently attenuated from the illegal stop. We therefore vacate the trial court's determination of consent. The trial court is not precluded on remand, however, from considering whether defendant consented to the search of the vehicle and its contents. If the trial court decides to focus on defendant's consent and determines that defendant voluntarily consented to the search, it will also need to determine whether defendant's consent was sufficiently attenuated from the illegal stop. *See Thurman,* 846 P.2d at 1263. In view of our disposition of this case, we need not reach the other issues raised by defendant.

## CONCLUSION

The trial court erred in holding that the initial stop was legal. The trial court's findings with respect to standing (under the abandonment theory) and consent are therefore inadequate.

We vacate the trial court's ruling and remand the case for further proceedings consistent with this opinion.

BILLINGS and GREENWOOD, JJ., concur.