OPINION
 

 BILLINGS, Associate Presiding Judge:
 

 [ 1 Lacy Bissegger appeals the trial court's order denying her motion to suppress evidence from Bissegger's personal property seized during a warrantless search of a car in which she was a passenger. We reverse and remand for proceedings consistent with this opinion.
 

 BACKGROUND
 
 [1]
 

 12 On the evening of November 5, 2001, appellant Lacy Bissegger was riding as a passenger in her boyfriend's car. Bissegger and her boyfriend were stopped by Provo Police because the car's registration had expired. Before the initial stop, Officer Wolken did not observe impaired driving or any other illegal activity. During the stop and the concomitant questioning, Officer Wolken testified that he smelled alcohol coming from the driver's breath. Officer Wolken saw no other signs of impairment, and knew both the driver and Bissegger were over the age of twenty-one. Based upon the odor of alcohol, Officer Wolken asked the driver to exit the car to perform a field sobriety test. The driver passed the field sobriety test. Officer Wolken then asked the driver if there were any open containers of alcohol in the car. The driver said that there were none and Officer Wolken observed none. However, Officer Wolken asked the driver for consent to search the car for open containers of alcohol. The driver consented to the search.
 

 1 3 Before searching the car, Officer Wolken ordered Bissegger out of the car. Bisseg-ger exited, but left behind some of her personal belongings, including a small opaque lip-balm container. Officer Wolken discovered this container on the dashboard during
 
 *181
 
 the search, but could not see inside the container and could not tell what, if anything, was inside. Officer Wolken testified that he knew the lip-balm container was Bissegger's. Officer Wolken unscrewed the lid of the lip-balm container and found methamphetamine inside. Bissegger was subsequently charged with possession of a controlled substance.
 

 1 4 Bissegger moved to suppress the methamphetamine found in the lip-balm container. After a hearing, the trial court denied Bis-segger's motion on the ground that she lacked Fourth Amendment standing to contest the search. Thereafter, Bissegger timely appealed.
 

 ISSUE AND STANDARD OF REVIEW
 

 T5 Bissegger argues the trial court erred in denying her motion to suppress. "In examining a denial of a motion to suppress, we review the trial court's findings of fact 'under a clearly erroneous standard' and the trial court's 'ultimate legal conclusions' based on those findings 'under a correctness standard' " State v. Sepulveda, 842 P.2d 913, 914 (Utah Ct.App.1992) (quoting State v. Lopez, 831 P.2d 1040, 1043 (Utah Ct.App.1992)) (other quotations omitted). The central issue raised in this appeal is whether the trial court erred in concluding Bissegger, as a passenger, lacked Fourth Amendment standing to challenge the search of her personal belongings in the car. Thus we must determine, as a matter of law, whether Bis-segger's "expectation of privacy" was objectively reasonable and legitimate,. Id. at 915.
 

 ANALYSIS
 

 I. Standing
 

 16 Bissegger argues that as a passenger in a car she has Fourth Amendment standing to challenge the search of the car. The Fourth Amendment guarantees "[the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. " Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. " Rakas v. Illinois, 439 U.S. 128, 133-34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (quoting Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969)); accord State v. Sepulveda, 842 P.2d 913, 915 (Utah Ct.App.1992). "[Tlo challenge the [constitutional] propriety of a search, a defendant must first establish 'a legitimate expectation of privacy in the invaded place' " State v. Scott, 860 P.2d 1005, 1007 (Utah Ct.App.1993) (quoting Rakas, 439 U.S. at 143, 99 S.Ct. at 430).
 

 T7 To determine whether a defendant has a legitimate expectation of privacy "we employ a two-step test." Sepulveda, 842 P.2d at 915. First, we examine whether the defendant has demonstrated "a subjective expectation of privacy in the searched area." Scott, 860 P.2d at 1007. "An expectation of privacy is a question of intent, which may be inferred from words spoken, acts done, and other objective facts." State v. Matison, 875 P.2d 584, 587-88 (Utah Ct.App.1994) (quotations and citations omitted). Second, we determine whether the defendant's expectation was objectively reasonable-that is, "whether society is 'willing to recognize the individual's expectation of privacy as legitimate." " Id. at 588 (quoting State v. Taylor, 818 P.2d 561, 565 (Utah Ct.App.1991) (other quotations and citations omitted)). The burden is on the defendant to show Fourth Amendment standing. See State v. Marshall, 791 P.2d 880, 887 (Utah Ct.App.1990) ("Once the defendant has been put on notice that the State claims the warrantless search was constitutional because [the defendant] has no expectation of privacy in the area searched, then the defendant must factually demonstrate that he does have standing to contest the warrantless search."), overruled on other grounds by State v. Bisner, 2001 UT 99,¶ 47, 37 P.3d 1073.
 

 18 We have held that a driver of a car who has either an ownership interest in the car or "permissive, possessory control of the car" has standing to challenge a search of the car. Matison, 875 P.2d at 588 (quotations and citation omitted); Sepulveda, 842 P.2d at 915. However, a car passenger does not normally have standing to object to a search of the car absent an ownership or possessory interest in the car. See Rakas,
 
 *182
 
 439 U.S. at 148-49, 99 S.Ct. at 433. In Rakas, the United States Supreme Court established that "a [car] passenger gua passenger simply would not normally have a legitimate expectation of privacy" in the car or its contents. Id.; see also State v. Scott, 860 P.2d 1005, 1007-08 (Utah Ct.App.1993) (finding defendant passenger did not have an expectation of privacy in the car itself where he left some personal items in the glove box).
 

 T9 Bissegger argues, however, that she has standing to challenge the search of her personal belongings left in a closed container in the car. Although Utah appellate courts have not addressed this precise issue, other jurisdictions have overwhelmingly held that a separate search of a car passenger's personal belongings left in the car gives the passenger standing to challenge the search. See, e.g., United States v. Salazar, 805 F.2d 1394, 1396 (9th Cir.1986) (holding that a car passenger had a reasonable expectation of privacy in his closed brown paper bag found on the floorboard of his companion's car); People v. Manke, 181 Ill.App.3d 374, 130 Ill.Dec. 192, 537 N.E.2d 13, 15 (1989) (concluding that a car passenger whose closed brown paper bag was found in car's trunk, and was searched by police, had standing to challenge search); Arnold v. Commonwealth, 17 Va.App. 313, 437 S.E.2d 235, 237 (1993) (holding that a car passenger had a legitimate expectation of privacy in his closed plastic shopping bag found on the floor of the car).
 

 " 10 Other jurisdictions have also held that car passengers have a legitimate expectation of privacy in their coats or jackets found in cars. See People v. Armendarez, 188 Mich.App. 61, 468 N.W.2d 893, 900 (1991) (finding that car passenger had "standing to object to the search of his personal effects in the car, namely, his coat," where his coat was found on front seat of vehicle); State v. McCarthy, 258 Mont. 51, 852 P.2d 111, 112-13 (1993) (holding that car passenger had legitimate expectation of privacy in his jacket found crumpled on the back seat of car).
 

 1 11 Finally, other jurisdictions have found that car passengers have a legitimate expectation of privacy in their purses left in cars. See United States v. Buchner, 7 F.3d 1149, 1151, 1154 (5th Cir.1993) (holding that the owner of a shoulder bag, located on the front seat of his girlfriend's car, had a legitimate expectation of privacy in the bag and its contents); United States v. Welch, 4 F.3d 761, 764 (9th Cir.1993) (holding that car passenger who left her purse in her boyfriend's car "had a reasonable expectation of privacy in the contents of her purse. Indeed, a purse is a type of container in which a person possesses the highest expectations of privacy"); State v. Friedel, 714 N.E.2d 1231, 1235-37 (Ind.Ct.App.1999) (holding that car passenger whose purse was found on floor behind driver's seat and searched had standing because "a purse is clearly a container in which a person has a legitimate expectation of privacy").
 

 112 We conclude Bissegger had a legitimate expectation of privacy in her opaque lip-balm container left in the car. The State has stipulated that the lip-balm container was Bissegger's personal property. A lip-balm container is analogous to a shopping bag, shoulder bag, jacket, or purse, as each of these items is a closed container that keeps the owner's personal things hidden from public view. Here, Officer Wolken could not know what, if anything, the lip-balm container contained until he unscrewed the lid and peered inside. Furthermore, we see no meaningful distinction between a lip-balm container and a paper or plastic grocery bag. Because Bissegger placed private things in a closed opaque container, she had a legitimate expectation of privacy in the contents of that container. Thus, Bissegger, as a passenger asked by a police officer to leave the car, has standing to object to the seizure and search of her personal property found inside the car.
 

 II. Abandonment
 

 113 The State argues that even if Bissegger had a legitimate expectation of privacy in the lip-balm container, she does not have standing to challenge the search because she abandoned the lip-balm container. "[A] person who has voluntarily abandoned property lacks standing to object to a search or seizure of it," State v. Holbert, 2002 UT App 426,¶ 47, 61 P.3d 291 (quotations and citation omitted), because "[when individuals
 
 *183
 
 voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had." State v. Rowe, 806 P.2d 730, 736 (Utah Ct.App.1991) (quotations and citations omitted), rev'd on other grounds, 850 P.2d 427 (Utah 1992).
 

 114 Determining whether abandonment occurred is "primarily a factual question of intent to voluntarily relinquish a reasonable expectation of privacy." Rows, 806 P.2d at 736. Thus, the abandonment determination involves two inquiries: (1) whether the individual relinquished a legitimate expectation of privacy in the item; and (2) whether the relinquishment was voluntary. See id. "The burden of proving abandonment falls on the state, ... and must be shown by clear, unequivocal and decisive evidence." Id.
 

 T15 We conclude Bissegger never relinquished a legitimate expectation of privacy in the lip-balm container after being ordered out of the car. The State has failed to meet its burden of establishing abandonment by "clear, unequivocal and decisive evidence," Rowe, 806 P.2d at 736, because it has failed to produce any evidence that Bissegger voluntarily relinquished a legitimate expectation of privacy in the lip-balm container. Thus, we conclude Bissegger did not abandon her lip-baim container when she was ordered to exit the car.
 

 III. IMegal Detention
 

 116 Because we determine Bis-segger had standing as a passenger to object to the search of her personal property left in the car, we must determine whether the search was lawful.
 

 (17 An unreasonable traffic stop is an unconstitutional seizure. See State v. Hansen, 2002 UT 125,¶ 28, 63 P.3d 650. "To determine whether a traffic stop was reasonable, we consider two questions: (1) Was the police officer's action justified at its inception?[;] and (2) Was the resulting detention reasonably related in scope to the circumstances that justified the interference in the first place? " Id. at ¶ 29 (quoting State v. Lopez, 873 P.2d 1127, 1131-32 (Utah 1994) (other citation omitted). Here, the traffic stop for expired registration was justified at its inception as the stop was " "incident to a traffic violation committed in [an officer's] presence." " Lopez, 873 P.2d at 1132 (quoting State v. Talbot, 792 P.2d 489, 491 (Utah Ct.App.1990)). However, the resulting detention was not reasonably related in scope to the cireumstances that justified the initial stop.
 

 [ Djuring a traffic stop an officer may request a driver's license and vehicle registration, conduct a computer check, and issue a citation.... Onee the purpose of the initial stop is concluded, however, the person must be allowed to depart. Any further temporary detention for investigative questioning after [fulfilling]! the purpose for the initial traffic stop constitutes an illegal seizure, unless an officer has probable cause or a reasonable suspicion of a further illegality.
 

 Hansen, 2002 UT 125 at ¶ 31, 63 P.3d 650 (final alteration in original) (quotations and citations omitted).
 

 18 After Officer Wolken verified the driver license and registration and completed a computer check, the purpose for the initial traffic stop was concluded. However, at this point Officer Wolken testified he smelled alcohol. This justified a continuation of the detention to conduct a field sobriety test.
 

 119 Nevertheless, even if Officer Wolken had a reasonable suspicion that the driver was driving under the influence, the seope of the stop would still have been limited. See Lopez, 873 P.2d at 1132.
 

 If reasonable suspicion of more serious criminal activity does arise, the scope of the stop is still limited. The officers must "diligently [pursue] a means of investigation that [is] likely to confirm or dispel their suspicions quickly, during which time it [is] necessary to detain the defendant."
 

 Id. (emphasis added) (alterations in original) (quoting State v. Grovier, 808 P.2d 133, 136 (Utah Ct.App.1991) (other quotations and citation omitted)).
 

 120 Here, the officer conducted a field sobriety test, the driver performed successfully, and thus, any further detention was
 
 *184
 
 unlawful. - Officer Wolken exceeded the scope of detention when he requested permission to search the car. See State v. Robinson, 797 P.2d 431, 437 (Utah Ct.App.1990) (finding Fourth Amendment violation where police did not have "the reasonable suspicion of criminal activity necessary to justify their continued detention and questioning of [defendants] once ... the purpose for the initial stop had been accomplished"). Accordingly, the search of the car and particularly the search of the lip-balm container was illegal.
 

 CONCLUSION
 

 121 Bissegger had standing to object as a passenger to the search of her personal property left in the car after she was ordered to exit the car. Because Officer Wolken's search of the vehicle and Bissegger's personal property left therein exceeded the scope of the detention, the search was illegal, Therefore, the district court erred in failing to grant Bissegger's motion to suppress. We therefore reverse and remand for proceedings consistent with this opinion.
 

 122 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and JAMES Z. DAVIS, Judge.
 

 [1]
 

 . We state the facts as stipulated to by the State.