2005 UT 84

**STATE of Utah, Plaintiff and Petitioner,**

v.

**Tanja RYNHART, Defendant and Respondent.**

**No. 20040115.**

Supreme Court of Utah.

Nov. 22, 2005.

Mark L. Shurtleff, Att'y Gen., Christine Soltis, Marian Decker, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

James M. Retallick, Ogden, for defendant.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Tanja Rynhart was arrested and charged with possession of a controlled substance after police officers discovered a small bag of cocaine in her purse. At the time of the discovery, Rynhart's purse was in her van, which she had left unattended in a marsh after driving off the road and crashing through two fences. Rynhart filed a motion to suppress the cocaine, arguing that the police officer illegally searched her van in violation of her rights guaranteed by the Fourth Amendment to the United States Constitution. The State argued that the search was valid because Rynhart had abandoned her van. Alternatively, it relied on the emergency aid doctrine. The district court concluded that the search was not justified under the doctrine of abandonment, but nonetheless denied Rynhart's motion, holding that the emergency aid doctrine applied. Rynhart sought interlocutory review of the district court's order with the court of appeals, which reversed, holding that the

search could not be upheld under either doctrine. Because we conclude that Rynhart abandoned any reasonable expectation of privacy in her van and purse, we hold that the search was permissible under the abandonment doctrine. Accordingly, we reverse.

## BACKGROUND

¶ 2 At 8:30 a.m. on Sunday, January 6, 2002, a Brigham City police officer was called to the scene of a single-vehicle accident. Upon arriving, the officer observed that a van, which was then located in the middle of a privately owned field, had traveled "over the curb, down an embankment, [and] through two fences" before coming to rest in the field. Because the tire tracks were covered with freshly fallen snow, the officer deduced that the accident occurred prior to the snowfall, which had begun approximately five hours earlier.

¶ 3 The officer approached the van and opened a door to determine whether anyone was still inside. Although the officer did not see anyone in the van, he did observe a purse, a briefcase, and a partially consumed bottle of vodka. When he opened the purse, he discovered a wallet containing nearly $330 in cash, Rynhart's driver's license, and "a small bag that had a white powdery substance in it."

¶ 4 The officer attempted to reach Rynhart by phone, but was unsuccessful. Thereafter, the owner of the field in which the van had come to rest spoke to the officer, requesting the van's removal so that he could begin to repair the damaged fences. Accordingly, just prior to 10:00 a.m., the officer had the van towed to a wrecking yard. The officer remained at the scene for a short time thereafter, but Rynhart did not return. At approximately 2:00 p.m. that same day, the towing company notified the officer that Rynhart had arrived to arrange for the retrieval of her van. The officer met Rynhart at the wrecking yard and inquired about the small bag found in her purse. Rynhart admitted that the substance was cocaine. She was subsequently arrested and charged with possession of a controlled substance, a second

degree felony, and possession of drug paraphernalia, a class B misdemeanor.

¶ 5 Prior to trial, Rynhart moved to suppress the evidence seized as a result of the warrantless search of her van and purse. She argued that the search violated both the United States and Utah Constitutions because "[t]he officer lacked any justification to search the vehicle pursuant to any public safety or warrantless search exception." The State responded by arguing that the search was constitutional under either one or both of two theories: (1) the abandonment doctrine, and (2) the emergency aid doctrine. Pursuant to *State v. Rowe*, 806 P.2d 730 (Utah Ct.App.1991), *rev'd on other grounds*, 850 P.2d 427 (Utah 1992), the district court rejected the State's theory that Rynhart abandoned her privacy expectation in the van, declaring that "[t]he apparent early hour, the winter conditions, and the single vehicle nature of the accident all combine to belie the officer's imputing an intent to abandon the vehicle." The district court upheld the constitutionality of the search, however, under the emergency aid doctrine.

¶ 6 On September 23, 2002, Rynhart filed a petition for interlocutory appeal, which the court of appeals granted. The court of appeals reversed the district court, holding that the emergency aid doctrine did not apply. *State v. Rynhart*, 2003 UT App 410, ¶ 15, 81 P.3d 814. The court of appeals also held that the search could not be upheld under the abandonment doctrine, stating that

> the State suggests that we should, without the benefit of a cross-appeal, reverse the [district] court's ruling that Rynhart had not abandoned her expectation of privacy in her vehicle. Not only does the record offer scant support for that proposition, it offers *no* support whatsoever that Rynhart abandoned her expectation of privacy in her purse and the contents thereof, or her wallet and the contents thereof.

*Id.* ¶ 9 n. 3 (emphasis added).

¶ 7 In a dissenting opinion, Judge Thorne embraced the State's position, concluding that Rynhart had abandoned any privacy interest she may have had in the van and the purse when she "left the vehicle, and its contents, illegally parked and unsecured for several hours following her accident." *Id.* ¶ 32. Additionally, Judge Thorne criticized the rule of law applied by the majority, as articulated in *State v. Bissegger*, 2003 UT App 256, ¶ 14, 76 P.3d 178, and *Rowe*, 806 P.2d at 736, which requires the State to prove by "clear, unequivocal and decisive evidence" that Rynhart intended to abandon her privacy interest in the property. *Rynhart*, 2003 UT App 410, ¶ 24 n. 4, 81 P.3d 814. According to Judge Thorne, this "abandonment standard" is flawed and should be rejected. *Id.* ¶ 39.

¶ 8 The State petitioned this court for a writ of certiorari, presenting the question for review as follows: "Did [Rynhart] retain a reasonable expectation of privacy in her minivan and its contents when she left the vehicle wrecked and unlocked on another's property without reporting the single-car accident to either the police or the property owner?" We granted the State's petition and have jurisdiction pursuant to section 78–2–2(3)(a) of the Utah Code. Utah Code Ann. § 78–2–2(3)(a) (2002).

## STANDARD OF REVIEW

¶ 9 "On certiorari, we review the court of appeals' decision for correctness, focusing on whether that court correctly reviewed the [district] court's decision under the appropriate standard of review." *Hansen v. Eyre*, 2005 UT 29, ¶ 8, 116 P.3d 290 (internal quotations omitted). An appellate court reviews a district court's decision concerning the constitutionality of a search and seizure for correctness, applying no deference to the district court's legal conclusion. *See State v. Markland*, 2005 UT 26, ¶¶ 7–9, 112 P.3d 507.

¶ 10 In this case, the court of appeals suggested that the issue of abandonment was not properly before it because the State did not file a cross-appeal. But this court has recognized that

> an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the [district] court to be the basis of its ruling or action,

and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court.

*First Equity Fed., Inc. v. Phillips Dev., LC,* 2002 UT 56, ¶ 11, 52 P.3d 1137. Because the doctrine of abandonment was apparent on the record and was, in fact, considered by the district court and raised in the State's brief to the court of appeals, it was properly before the court of appeals and is properly before us.

## ANALYSIS

¶ 11 The State identifies two alleged deficiencies in the court of appeals' analysis. First, the State asserts that the court of appeals erred when it required the State to prove abandonment by clear and convincing evidence. Second, the State argues that the court of appeals erred when it applied an abandonment test that focuses solely on a defendant's subjective intent. We address each issue in turn.

¶ 12 Before beginning our analysis, we pause to note that "federal Fourth Amendment protections may differ from those guaranteed our citizens by our state constitution." *Brigham City v. Stuart,* 2005 UT 13, ¶ 10, 122 P.3d 506; *see also State v. DeBooy,* 2000 UT 32, ¶ 12, 996 P.2d 546 ("While this court's interpretation of article I, section 14 has often paralleled the United States Supreme Court's interpretation of the Fourth Amendment, we have stated that we will not hesitate to give the Utah Constitution a different construction where doing so will more appropriately protect the rights of this state's citizens."). But because neither party has adequately analyzed the state constitutional claim as an issue separate and distinct from its federal counterpart, we will not address it. *See Stuart,* 2005 UT 13, ¶ 14, 122 P.3d 506 ("Because we are resolute in our refusal to take up constitutional issues which have not been properly preserved, framed and briefed, we are once again foreclosed from undertaking a principled exploration of the interplay between federal and state protections of individual rights without the collaboration of the parties to an appeal." (citations omitted));

*Midvale City Corp. v. Haltom,* 2003 UT 26, ¶ 75, 73 P.3d 334 ("Without analysis, the court can make no informed decision regarding whether the state constitutional provision in question was intended to mirror its federal counterpart, or whether it was intended to expand the scope of First Amendment guarantees."). Accordingly, our analysis in this case turns only on federal Fourth Amendment principles.

## I. BURDEN OF PROOF

¶ 13 We first address the State's contention that the court of appeals erred in applying an incorrect burden of proof. In its opinion, the court of appeals cited *State v. Bissegger,* 2003 UT App 256, 76 P.3d 178, as its basis for holding that Rynhart did not abandon her expectation of privacy. *State v. Rynhart,* 2003 UT App 410, ¶ 9 n. 3, 81 P.3d 814. In *Bissegger,* the court of appeals held that the State must prove abandonment by "clear, unequivocal and decisive evidence." 2003 UT App 256, ¶ 14, 76 P.3d 178 (citation omitted). The State contends that the court of appeals departed from traditional Fourth Amendment jurisprudence by applying that burden of proof. We agree.

¶ 14 When considering whether an individual has abandoned property for purposes of the Fourth Amendment, it is "critical" to recognize the "distinction between abandonment in the property-law sense and abandonment in the constitutional sense." *City of St. Paul v. Vaughn,* 306 Minn. 337, 237 N.W.2d 365, 370 (1975), *quoted in* 1 Wayne R. LaFave, *Search and Seizure* § 2.6(b), at 671 (4th ed.2004). "In the law of property, the question ... is whether the owner has voluntarily, intentionally, and unconditionally relinquished his interest in the property so that another, having acquired possession, may successfully assert his superior interest." *Id.* To prove abandonment in the property law context, one typically must establish it by clear, unequivocal, and decisive evidence. *See Linscomb v. Goodyear Tire & Rubber Co.,* 199 F.2d 431, 435 (8th Cir.1952) ("Proof of abandonment must be

made by the one asserting it by clear, unequivocal and decisive evidence.").

■ ¶ 15 Conversely, [i]n the law of search and seizure, ... the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment. *In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein.* *Vaughn,* 237 N.W.2d at 371 (emphasis added) (citations and footnote omitted). And whereas in the property law context one must prove abandonment by clear, unequivocal, and decisive evidence, the burden of proof in the Fourth Amendment context is much lower.

¶ 16 When addressing the burden of proof to be applied in search and seizure cases, the United States Supreme Court has declared that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." *United States v. Matlock,* 415 U.S. 164, 177 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *see also Lego v. Twomey,* 404 U.S. 477, 488, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) ("[W]e are unconvinced that merely emphasizing the importance of the values served by exclusionary rules is itself sufficient demonstration that the Constitution also requires admissibility to be proved beyond reasonable doubt[ ].... [N]o substantial evidence has accumulated that federal rights have suffered from determining admissibility by a preponderance of the evidence." (footnote omitted)).

¶ 17 We acknowledge that jurisdictions have disagreed on the appropriate burden of proof to apply in those cases in which the prosecution raises abandonment in defending the lawfulness of a search and seizure. *Compare Friedman v. United States,* 347 F.2d 697, 704 (8th Cir.1965) ("Proof of abandonment must be made by the one asserting it by clear, unequivocal and decisive evidence." (citation omitted)), *with United States v. Pitts,* 322 F.3d 449, 456 (7th Cir.2003) ("To demonstrate abandonment, the government must prove by a preponderance of the evi-

dence that ... the defendant relinquished his property interests in the item to be searched."). We conclude, however, that the distinction between the concept of abandonment in property law and in the context of the Fourth Amendment supports application of the burden of proof generally applicable to motions to suppress. Accordingly, in those instances where the State defends the legality of a search based on a theory of abandonment, the State must establish that the defendant abandoned her expectation of privacy in her property by a preponderance of the evidence. *See Lego,* 404 U.S. at 488–89, 92 S.Ct. 619; *Matlock,* 415 U.S. at 177 n. 14, 94 S.Ct. 988.

■ ¶ 18 We find support for this conclusion in the fact that the preponderance of the evidence standard applies in evaluating the standing of an individual seeking to challenge the validity of a search. *See United States v. Cantley,* 130 F.3d 1371, 1377 (10th Cir.1997) ("The burden was thus on [the defendant] to show by a preponderance of the evidence that [he] was personally aggrieved by the alleged search and seizure because it invaded [his] subjective expectation of privacy which society is prepared to recognize as reasonable." (some alterations in original) (internal quotations omitted)). The doctrine of abandonment, as applied in search and seizure contexts, "is akin to the issue of standing because a defendant lacks standing to complain of an illegal search or seizure of property which has been abandoned." *United States v. Garzon,* 119 F.3d 1446, 1449 (10th Cir.1997). In other words, a defendant who has abandoned particular property has lost any privacy interest in that property and lacks standing to challenge searches or seizures of that property. The burden of proof used to evaluate standing should also be applied in those cases in which the doctrine of abandonment is asserted as a justification for a warrantless search and seizure. Consequently, to justify the warrantless search in this case, the State need only demonstrate by a preponderance of the evidence that Rynhart abandoned her expectation of privacy in her van and purse.

## II. THE ABANDONMENT TEST

¶ 19 Having identified the level of proof by which the State must establish abandonment, we turn to the elements of the abandonment test. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "Warrantless searches are per se unreasonable" and thus violate the Fourth Amendment "unless undertaken pursuant to a recognized exception to the warrant requirement." *State v. Brown*, 853 P.2d 851, 855 (Utah 1992). But "a warrantless search or seizure of *abandoned* property is not unreasonable under the Fourth Amendment" because an individual who has abandoned her property voluntarily "forfeit[s] any expectation of privacy" in that property. *United States v. Trimble*, 986 F.2d 394, 399 (10th Cir.1993) (emphasis added).

¶ 20 In this case, the court of appeals relied on *State v. Bissegger*, 2003 UT App 256, 76 P.3d 178, to support its conclusion that "Rynhart never 'voluntarily relinquished a reasonable expectation of privacy' and, accordingly, ... did not abandon her expectation of privacy in her vehicle or in its contents." *State v. Rynhart*, 2003 UT App 410, ¶ 9 n. 3, 81 P.3d 814 (quoting *Bissegger*, 2003 UT App 256, ¶ 14, 76 P.3d 178). In *Bissegger*, the court of appeals relied on *State v. Rowe*, 806 P.2d 730 (Utah Ct.App.1991), *rev'd on other grounds*, 850 P.2d 427 (Utah 1992), in describing the doctrine of abandonment. The *Bissegger* court declared: "Determining whether abandonment occurred is 'primarily a factual question of intent to voluntarily relinquish a reasonable expectation of privacy.' Thus, the abandonment determination involves two inquiries: (1) whether the individual relinquished a legitimate expectation of privacy in the item; and (2) whether the relinquishment was voluntary." 2003 UT App 256, ¶ 14, 76 P.3d 178 (quoting *Rowe*, 806 P.2d at 736). Additionally, in *Rowe*, the court of appeals stated that abandonment "is measured from the vantage point of the defendant, and not the police. It is only the [defendant's] state of mind that counts." 806 P.2d at 736 (alteration in original) (internal quotations and citation omitted).

¶ 21 The State argues that the court of appeals' formulation of this test constitutes error. We agree. The "test of abandonment subsumes both a subjective and objective component." *United States v. Garzon*, 119 F.3d 1446, 1449 (10th Cir.1997). Accordingly, to determine whether the State has established abandonment, a court must ask whether the property owner has retained an expectation of privacy in the object that society would recognize as objectively reasonable. *See United States v. Burbage*, 365 F.3d 1174, 1178 (10th Cir.2004), *cert. denied*, 543 U.S. 993, 125 S.Ct. 510, 160 L.Ed.2d 381 (2004); *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir.1995). " 'An expectation of privacy is a question of intent which may be inferred from words, acts, and other objective facts.' " *Austin*, 66 F.3d at 1118 (quoting *United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir.1993)). A property owner need not intend to permanently relinquish ownership or possession to forfeit a reasonable expectation of privacy; she need only leave an item unsecured in a public place. *See California v. Greenwood*, 486 U.S. 35, 40, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *United States v. Barlow*, 17 F.3d 85, 88 (5th Cir.1994). When determining whether a property owner has an expectation of privacy, the property owner's subjective intent is only one of the factors to be considered. Ultimately, the test is whether the external manifestations of the property owner's intent would lead a reasonable person to believe that the property owner had voluntarily abandoned any legitimate privacy interest in the object or place to be searched.

¶ 22 Were this a case with disputed facts, we would remand with instructions that the trier of fact consider the State's abandonment defense in light of the legal principles enumerated herein. Because the facts in this case are not in dispute, however, we will simply proceed with the analysis.

¶ 23 Applying the test articulated above, we conclude that Rynhart had no expectation of privacy in either her van or her purse. We base this conclusion on the facts available to the searching officer. In this case, the

searching officer was not confronted with any facts suggesting that Rynhart intended to retain her privacy interest in her purse or van. Rynhart did not secure her vehicle, inform either the property owner or the police of the accident, or take her purse with her when she left the scene. Instead, she left her purse in the unlocked van for more than five hours, acknowledging her interest in the property only after the search had been completed and the van had been towed to a wrecking yard. Even if Rynhart had intended to retain an expectation of privacy in her van and purse, we would nevertheless conclude that she abandoned her property for purposes of the Fourth Amendment because any such expectation is not one that society would recognize as objectively reasonable under the facts presented here. By leaving her van and purse at the scene of an accident without any indication that she intended to return, Rynhart rendered any subjective expectation of privacy objectively unreasonable. We conclude that Rynhart abandoned her van and purse and, consequently, forfeited any privacy expectation in those objects. Accordingly, the officer's search of her van and purse did not violate the Fourth Amendment.

## CONCLUSION

¶ 24 We hold that the court of appeals erred in requiring the State to prove abandonment by clear, unequivocal, and decisive evidence. The burden of proof applicable in Fourth Amendment cases in which the State asserts abandonment is the burden of proof applied to motions to suppress generally—preponderance of the evidence. The court of appeals further erred in focusing solely on Rynhart's subjective intent. The appropriate test for determining whether a property owner has relinquished her expectation of privacy subsumes both an objective and a subjective component. Because we conclude that Rynhart did not intend to retain any expectation of privacy in her purse and van and that, even if she had, any such intent was not objectively reasonable, we hold that the court of appeals erred in suppressing the evidence obtained through the search of Rynhart's van.

¶ 25 We therefore reverse and remand to the court of appeals for proceedings consistent with this opinion.

¶ 26 Chief Justice Durham, Associate Chief Justice Wilkins, Justice Durrant, and Justice Nehring concur in Justice Parrish's opinion.